UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDWARD HOWARD,<br><br>Plaintiff,<br><br>v.<br><br>POWERHOUSE COACH, INC, a corporation; DOUG TOLBERT, an individual; BECKIE TOLBERT, an individual; TODD TOLBERT, an individual,<br><br>Defendants. | Case No. 4:25-cv-00494-AKB<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS' RENEWED MOTION TO DISMISS** |

Before the Court is Defendants Doug Tolbert, Beckie Tolbert, Todd Tolbert, and Powerhouse Coach, Inc.'s Renewed Motion to Dismiss (Dkt. 47; Dkt. 35). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal arguments are adequately presented, and that oral argument would not significantly aid its decision-making process, and it decides the motion on the record. Dist. Idaho Loc. Civ. R. 7.1(e)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons discussed below, the Court grants the motion in part and denies in part.

## I. BACKGROUND

Plaintiff Edward Howard is a resident and citizen of the state of California (Dkt. 41 ¶ 1). Defendants Doug, Beckie, and Todd Tolbert (collectively, the Tolbert Defendants) are alleged to be residents and citizens of the state of Idaho (*id.* ¶¶ 3–5; Dkt. 46 at 2), and Defendant Powerhouse Coach, Inc. (Powerhouse), is a corporation with its principal place of business in the state of Idaho

(Dkt. 41 ¶ 2; Dkt. 46 ¶ 2). On November 28, 2022, Howard and Powerhouse executed a contract wherein Powerhouse would construct a custom luxury motor coach (Motor Coach) for Howard, and Howard would purchase the Motor Coach for an estimated total of $1,136,532.20 (Dkt. 41-1). Doug Tolbert is the president, a shareholder, officer, and supervisor of Powerhouse (Dkt. 46 ¶ 3). Beckie Tolbert is the secretary and a shareholder of Powerhouse (*id.* ¶ 4). The degree to which Todd Tolbert is a shareholder, employee, or independent contractor hired by Powerhouse, is disputed (Dkt. 41 ¶ 5; Dkt. 47-1 at 2).

Howard alleges that the Motor Coach suffered from numerous defects upon delivery and that the condition of the Motor Coach left it "completely defective, uninhabitable, and undrivable" (Dkt. 48 at 2). He claims that the condition of the Motor Coach resulted in substantial costs to repair and relocate the Motor Coach and considerable expenses in hiring experts, damage to personal property stored within the Motor Coach, and severe emotional distress resulting from a "near-fatal incident," which he alleges the defective construction and assembly of the Motor Coach caused (*id.*). Howard alleges that the Motor Coach's various water tanks were improperly installed, resulting in extensive flooding of sewage throughout the Motor Coach (Dkt. 41 ¶ 71(c)). Howard approximates his alleged damages to be in excess of two million dollars (*id.* ¶¶ 1, 31). Howard filed suit against Defendants for breach of contract; negligence; intentional misrepresentation; violations of the Idaho Consumer Protection Act (ICPA), Idaho Code § 48-601 (1990); unjust enrichment; fraud; reformation of contract; breach of warranty pursuant to the Magnuson-Moss Warranty Act; and violations of California's Consumer Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1750–1756 (West 2026) (Dkt. 41 ¶¶ 25–120). Howard seeks reformation of contract (*id.* ¶¶ 93–97), as well as general, compensatory, statutory, and punitive damages (*id.* ¶¶ 1–13, at 31–32).

Defendants filed a motion to dismiss on November 14, 2025 (Dkt. 35), in response to Howard's First Amended Complaint (Dkt. 11). Howard filed a Second Amended Complaint on December 19 (Dkt. 41). On January 9, 2026, Defendant's filed a Renewed Motion to Dismiss (Dkt. 47). Powerhouse argues the Court should dismiss Howard's negligence and CLRA claim, and the Tolbert Defendants move to dismiss the entire complaint as against them, individually.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." A court must consider the complaint in its entirety. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Rule 8 requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To avoid dismissal under Rule 12(b)(6) a complaint must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation modified); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). "A Rule 12(b)(6) dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation modified).

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common

sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995–96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First, a court should identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 996 (citation modified) (quoting *Iqbal*, 556 U.S. at 679). Second, "a court should assume the veracity of well pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief." *Id.* (citation modified) (quoting *Iqbal*, 556 U.S. at 679). Where a complaint pleads facts which are merely consistent with the defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

### A. Negligence and the Economic Loss Rule

Howard alleges a claim of negligence, asserting that Defendants failed to exercise ordinary care in supervision and construction of the Motor Coach (Dkt. 41 ¶ 31), resulting in economic damages (*id.* ¶ 32), direct property damage (*id.* ¶ 36), and emotional distress (*id.* ¶ 37). Defendants argue that Howard's negligence claim is barred by the economic loss rule (Dkt. 47-1 at 5–8).

"The general rule in Idaho is that there is no recovery for pure economic loss in a negligence action, as there is no 'duty' to prevent economic loss to another." *Nelson v. Anderson Lumber Co.*, 99 P.3d 1092, 1100 (Idaho Ct. App. 2004); *see also Duffin v. Idaho Crop Improvement Ass'n*, 895 P.2d 1195, 1200 (Idaho 1995), *abrogated on other grounds by Davis v. Blast Props., Inc.*, 551 P.3d 706 (Idaho 2024). Idaho has recognized three exceptions to the economic loss rule: (1) when the economic loss is "parasitic to an injury to person or property," *First Bank of Lincoln v. Land Title of Nez Perce Cnty., Inc.*, 452 P.3d 835, 845 (Idaho 2019) (quoting *Duffin*, 895 P.2d at 1200); (2) where "a special relationship exists between the parties";

and (3) "where unique circumstances require a reallocation of the risk." *Aardema v. U.S. Dairy Systems, Inc.*, 215 P.3d 505, 512 (Idaho 2009). Howard argues the economic loss rule does not bar his negligence claim because he alleged non-economic damages and the special relationship exception applies (Dkt. 48 at 4).

**1. Non-Economic Damages**

Generally, economic loss is defined as losses related to the subject of the contract or transaction and includes "costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use." *Aardema*, 215 P.3d at 510 (quoting *Duffin*, 895 P.2d at 1200). It does not include damage to person or property when the property is not the subject of the transaction. *Aardema*, 215 P.3d at 510. Howard maintains that his claim falls outside the economic loss rule's scope because he alleged non-economic damages—his emotional distress and his personal property that was damaged inside the Motor Coach when the sewage system flooded are not subject to the transaction (Dkt. 48 at 4).

Turning first to Howard's claim for emotional distress, Defendants contend it must be dismissed because Howard failed to adequately specify any physical manifestations of the alleged emotional distress (Dkt. 47-1 at 6). A claim for negligent infliction of emotional distress (NIED) requires the same elements as a common law negligence action—duty, breach, causation, and damages. *Nation v. State, Dep't of Corr.*, 158 P.3d 953, 965–66 (Idaho 2007); *Johnson v. McPhee*, 210 P.3d 563, 574 (Idaho Ct. App. 2009) (citing *Brooks v. Logan*, 903 P.2d 73, 78 (Idaho 1995)). Importantly, the plaintiff must also allege "*some* physical manifestation of the [his] emotional injury," *Johnson*, 210 P.3d at 574 (emphasis added). Vague or generic pleading is not sufficient to support an NIED claim; the alleged facts must be specific enough that defendants are not "forced to guess at which specific facts might support such a claim." *Bostock v. Aurora Loan Services,*

*LLC*, No. 14-cv-00329-BLW, 2016 WL 1072077, at *4 (D. Idaho Mar. 16, 2016). In *Bostock*, the plaintiff alleged that her "health has suffered tremendously from the last six years of stress due to [the defendant's] actions." *Id.* The Court found the plaintiff's factual allegations were too vague to state an NIED claim. *Id.* In dismissing her claim, the Court granted her leave to amend, noting that the complaint must allege the plaintiff suffered a physical injury, "such as headaches, suicidal ideation, sleep disorders, fatigue, stomach pain and loss of appetite." *Id.*

Here, Howard's complaint alleges Defendants' negligence "caused [him] to suffer severe emotional distress, including upset, anguish, pain and suffering, physical and mental pain, and the physical manifestation of emotional injuries" (Dkt. 41 ¶ 37). Like *Bostock*, Howard provides no account of the nature of his physical or mental pain and suffering, nor any specific description of what, exactly, these physical manifestations might be, forcing Defendants to guess at which specific facts would support such a claim. Furthermore, Howard's allegations amount to precisely what the *Iqbal* Court described as "recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Because Howard has not adequately pleaded a claim for emotional distress, his negligence claim does not include a cognizable injury to person that would take it outside the economic loss rule.

Next, Defendants argue the economic loss rule applies to Howard's alleged personal property damage because it is the subject of the transaction (Dkt. 47-1 at 6). The Idaho Supreme Court has explained that Idaho's economic loss rule caselaw has "implicitly defined the 'subject of the transaction' by the *subject matter of the contract*." *Aardema*, 215 P.3d at 511; *see also Safeco Ins. Co. of Ill. v. LSP Prods. Grp., Inc.*, 619 F. Supp. 3d 1064, 1069 (D. Idaho 2022). In *Safeco Ins. Co. of Ill.*, the Court considered whether the economic loss rule barred tort recovery for damage to the parties' house and personal property purchased as part of the house transaction.

619 F. Supp. 3d at 1070. In determining whether the personal property was the subject of the house transaction, the Court looked at whether the property was acquired *with* the residence, rather than purchased separately. *Id.* at 1071. The Court found that because plaintiff did not allege in the complaint when the property was purchased nor submit any facts in its briefing, the economic loss rule applied. *Id.*

Here, Howard's complaint alleges he "suffered damage to his personal property separate and apart from the Motor Coach" (Dkt. 41 ¶ 36). Notably, the complaint does not specify exactly what personal property was damaged. Defendants, however, maintain that Howard's "personal property" consists of custom parts and elements of the Motor Coach that Plaintiff supplied and Defendants installed (Dkt. 47-1 at 6; Dkt. 41 ¶ 71(o) (listing property)). Although *Safeco* examined the rule in the context of summary judgment, the same principle applies here. Howard does not allege any facts from which the Court can reasonably infer that the personal property which the sewage flood damaged was outside the subject of the parties' transaction. Instead, he simply asserts the legal conclusion that the property was "separate and apart from the Motor Coach" (Dkt. 48 at 5; Dkt. 41 ¶ 36). Without factual allegations identifying the property or explaining how it was acquired apart from the Motor Coach or the parties' agreement, the Court cannot plausibly conclude that the economic loss rule does not bar his negligence claim. *See Iqbal*, 556 U.S. at 678. Defendants, on the other hand, have identified the only personal property referenced in the complaint—items Howard allegedly purchased from Defendants—as property that was itself the subject of the transaction. Howard alleges no facts to the contrary. Therefore, the economic loss rule applies to the Motor Coach and the personal property damaged within it.

### 2. Special Relationship Exception

Howard also argues that even if the economic loss rule applies, an exception applies because a special relationship exists between him and all Defendants (Dkt. 48 at 4). The Court disagrees.

Under the special relationship exception, a party may recover economic losses "where the relationship between the parties is such that it would be equitable to impose such a duty." *Duffin*, 895 P.2d at 1201. The Idaho Supreme Court has ruled that the special relationship exception "is an extremely narrow exception which applies in only limited circumstances." *Aardema*, 215 P.3d at 512. Idaho courts have recognized only two categories of special relationships for purposes of the economic loss rule: (a) where a professional or quasi-professional performs personal services, and (b) where an entity holds itself out to the public as having expertise regarding a specialized function. *Id.* Examples of professionals whose services may give rise to a special relationship include attorneys, architects, engineers, and physicians. *McAlvain v. Gen. Ins. Co. of Am.*, 554 P.2d 955, 958 (Idaho 1976). "Where the only relation between the parties is contractual, the liability of one to the other in an action of tort for negligence must be based upon some positive duty, which the law imposes because of the relationship, or because of the negligent manner in which some act which the contract provides for is done." *Wallace v. Hartford Fire Ins. Co.*, 174 P. 1009, 1010 (Idaho 1918); *see also Clark v. Int'l Harvester Co.*, 581 P.2d 784, 794 (Idaho 1978) ("Rather than obscure fundamental tort concepts with contract notions of privity, we believe it is analytically more useful to focus on the precise duty of care that the law of negligence, not the law of contract or an agreement by the parties, has imposed on the defendant.").

"No Idaho court has held that under the special relationship exception, a product seller or maker of a component part is liable in tort for economic loss to the buyer of the product." *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, 591 F. Supp. 2d 1161, 1170 (D. Kan. 2008)

(applying Idaho law), *aff'd sub nom. Mountain Bird, Inc. v. Goodrich Corp.*, 369 F. App'x 940 (10th Cir. 2010) (applying Idaho law). In *Millenkamp*, the Court similarly anticipated this reasoning when evaluating the sale of milk permeate that the seller failed to adequately label: "Defendant did not perform any personal services for Plaintiffs; rather, the parties engaged solely in a sale of a product. Such activity is not comparable to the services performed by an architect, engineer, or physician, which the Idaho Supreme Court has recognized []as creating a special relationship." *Millenkamp v. Davisco Foods Int'l Inc.*, 391 F. Supp. 2d 872, 879 (D. Idaho 2005). The court in *In re Cessna* likewise noted that a seller "of course attempts to sell products based on its expertise or reputation in the industry and attempts to induce reliance on the part of purchasers" but "[e]ven so, an ordinary buyer-seller relationship does not satisfy the special relationship exception to the economic loss rule." 591 F. Supp. 2d at 1171.

The present case arises out of the construction and sale of a product—the Motor Coach. Howard alleges that a special relationship exists because Defendants "held themselves out to the public . . . as 'having expertise regarding a specialized function'" (Dkt. 48 at 6) (quoting *Mountain Bird, Inc.*, 369 F. App'x at 944). But accepting Howard's argument would effectively extend the special relationship exception to ordinary buyer–seller transactions whenever a seller markets its expertise or specialized knowledge. As both *Millenkamp* and *In re Cessna* recognized, product manufacturers and sellers routinely rely on their expertise and reputation to induce consumers to purchase their products. Such an application would clearly contradict the Idaho Supreme Court's holding that the special relationship exception "is an extremely narrow exception which applies in only limited circumstances." *Aardema*, 215 P.3d at 512. Because Howard alleges nothing more than a contractual buyer–seller relationship arising from Defendants' construction and sale of the Motor Coach, the Court declines to find a special relationship.

Because Howard's negligence claim seeks recovery for purely economic losses and no exception to the economic loss rule applies, the Court dismisses Claim Two as against all Defendants without prejudice.

**B. CLRA**

Howard also brought claims of violation of the ICPA and, in the alternative, the CLRA (Dkt. 41 ¶¶ 66–75, 103–20). As a threshold matter, the parties have chosen the law of Idaho to govern their agreement (Dkt. 41-1 at 4). Based upon this provision, Defendants argue that Howard cannot pursue a CLRA claim because that cause of action is not recognized under Idaho law (Dkt. 47-1 at 8). Defendants' argument posits that (1) application of California law is precluded by the contract's choice-of-law provision; and (2) even if the contract did not include a choice-of-law provision, Idaho law would still apply under Idaho's conflict of law provisions (Dkt. 47-1 at 8). In response, Howard argues California substantive law should apply under Idaho's "most significant relationship" test (Dkt. 48 at 7).

In diversity cases, federal courts apply the choice-of-law rules of the forum state to determine state law questions. *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1089 (9th Cir. 2022). Because the complaint was filed in Idaho, Idaho's choice of law rules apply. The Idaho Supreme Court has long held "[c]hoice-of-law provisions are recognized in Idaho both in commercial and noncommercial transactions" and will be enforced. *Great Plains Equip., Inc. v. Nw. Pipeline Corp.*, 979 P.2d 627, 638 n.3 (Idaho 1999). Idaho has adopted the Restatement (Second) of Conflict of Laws to determine what law governs a contract. *See Ward v. Puregro*, 913 P.2d 582, 584–85 (Idaho 1996); *Cerami–Kote, Inc. v. Energywave Corp.*, 773 P.2d 1143, 1145 n.1 (Idaho 1989). The Restatement provides that "the law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that

issue." *Carroll v. MBNA Am. Bank*, 220 P.3d 1080, 1084 (Idaho 2009) (quoting Restatement (Second) of Conflict of Laws § 187(1) (A.L.I. 1971)). Even if an issue could not be resolved by an explicit provision in the contract, the chosen law will apply unless: (a) the chosen state has no substantial relationship to the parties or the transaction, and there is no other reasonable basis for the parties' choice; or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties. Restatement (Second) of Conflict of Laws § 187(2) (A.L.I. 2026); *Carroll*, 220 P.3d at 1084.

Howard concedes that Idaho generally enforces contractual choice-of-law provisions, but instead argues California law applies because application of Idaho law is contrary to a fundamental policy of California and that California has a materially greater interest than Idaho in protecting consumers (Dkt. 48 at 7–8). Howard misunderstands Idaho's conflict of law analysis. Under § 187(1), when the particular issue is one the parties could have resolved by an explicit provision in their agreement, the parties' chosen law applies. *See Ward*, 913 P.2d at 585 ("Since the issue presented in this case is one that could have been resolved by an explicit provision in the agreement, we will respect the parties' choice of California law."). The additional considerations identified in § 187(2) become relevant only if the particular issue could not have been resolved by an explicit contractual provision.

Here, the particular issue is whether the parties could choose which state's substantive law would govern their dispute. Because Idaho recognizes and regularly enforces contractual choice-of-law provisions, the parties could resolve this issue by explicit agreement. They did so here, by including in their contract a provision stating that "any dispute arising from or related to this

Contract shall be governed by the laws of the State of Idaho" (Dkt. 41-1 at 4). Because the particular issue here could be resolved by an explicit provision, § 187(1) controls, and there is no need to determine whether California has a materially greater interest in the issue or whether application of Idaho law would contravene a fundamental policy of California. Further, Howard's CLRA claim arises from and relates to the contract because it is based on Defendants' alleged conduct in connection with the sale of the Motor Coach. Accordingly, § 187(1) directs the Court to apply Idaho substantive law.

Applying Idaho law does not leave Howard without a statutory consumer-protection remedy. The ICPA is intended "to protect both consumers and businesses against unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade or commerce." Idaho Code § 48-601. Rather, the parties' choice-of-law provision determines which state's substantive consumer-protection law governs their dispute. Because Idaho law applies, Howard cannot pursue a claim under the CLRA. The Court therefore dismisses Howard's CLRA claim with prejudice.

**C. "Alter Ego" Liability**

The Tolbert Defendants move to dismiss all claims against them as individuals, arguing that all allegations concern acts performed on Powerhouse's behalf and that they were not individually parties to the contract (Dkt. 47-1 at 10). Howard argues that Powerhouse is the alter ego of the Tolbert Defendants, and therefore individual liability is proper (Dkt. 48 at 12).

Generally, a corporation is a separate legal entity and its shareholders, officers, and directors cannot be personally held liable for the debts or obligations of the corporation. *Idaho Inj. Laws., PA v. Litster Frost Inj. Laws., PLLC*, No. 52168, 2026 WL 2561482, at *5 (Idaho Aug. 31, 2026) (citing Idaho Code § 30-29-622) (slip opinion). "Nevertheless, when warranted, 'courts will pierce the corporate veil and look behind the form of an organization to determine its true character

and will disregard corporate form and consider substance rather than form.'" *Lunneborg v. My Fun Life*, 421 P.3d 187, 198 (Idaho 2018) (citation modified) (quoting *O'Bryant v. City of Idaho Falls*, 303 P.2d 672, 678 (Idaho 1956). "Piercing the corporate veil is 'the judicial act of imposing personal liability on otherwise immune corporate officers, directors, and shareholders for the corporation's wrongful acts.'" *VFP VC v. Dakota Co.*, 109 P.3d 714, 723 (Idaho 2005) (citation modified) (quoting Black's Law Dictionary 1184 (8th ed. 2004)). "The theory allows the fact finder to disregard the corporate form, thereby making individuals liable for corporate debts." *Id.* (citing *Minich v. Gem State Devs., Inc.*, 591 P.2d 1078, 1084 (Idaho 1979)). Such a determination should be made "cautiously and only where circumstances justify it." *Jolley v. Idaho Secs., Inc.*, 414 P.2d 879, 887 (Idaho 1966).

Under Idaho law, a plaintiff seeking to impose personal liability on otherwise protected corporate officers, directors, and shareholders for a company's wrongful acts must establish: "(1) a unity of interest and ownership to a degree that the separate personalities of the [company] and individual no longer exist and (2) if the acts are treated as acts of the [company] an inequitable result would follow." *Lunneborg*, 421 P.3d at 199 (quoting *Vanderford Co. v. Knudson*, 165 P.3d 261, 270–71 (Idaho 2007)).

In evaluating a unity of interest under the first prong, courts consider "the level of control that the shareholder exercises over the corporation, the lack of corporate formalities, the failure to operate corporations separately, keeping separate books, and the decision-making process of the entity." *Wandering Trails, LLC v. Bit Bite Excavation, Inc.*, 329 P.3d 368, 376 (Idaho 2014) (citing *Sur. Life Ins. Co. v. Rose Chapel Mortuary, Inc.*, 514 P.2d 594, 597 (Idaho 1973)). Other factors include whether "the sole shareholder [was] acting as president of the corporation"; "the shareholders fail[ed] to submit corporate contract and inventory revisions to the board of

directors"; and "business transactions [were] completed without approval by any director or officer." *Idaho Inj. Laws., PA*, 2026 WL 2561482, at *6 (quoting *Hutchison v. Anderson*, 950 P.2d 1275, 1279 (Idaho Ct. App. 1997)). These factors are nonexclusive, with no one factor weighing more than another. *Lunneborg*, 421 P.3d at 199–200. Rather, courts should conduct "a careful review of the entire relationship between various corporate entities and their directors and officers" to determine whether their separate personalities no longer exist. *Id.* at 200 (quoting *Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 636 (Utah 2012)). Liability may likewise extend beyond corporate shareholders and officers. *Id.* at 203–04 (piercing the veil to reach sole shareholder's wife). In determining whether to allow recovery against a non-shareholder-officer, "the court may look to a range of evidence . . . with the primary consideration being the element of control or influence exercised by that person in the affairs of the corporation." *Id.* at 203.

In *Lunneborg*, the Idaho Supreme Court identified several facts demonstrating a lack of corporate separateness, including the corporation's failure to hold regular meetings, issue stock certificates, maintain corporate minutes, or formally appoint officers. *Id.* at 200–01. The corporation also paid the sole shareholder's personal family expenses, including car payments, and the court noted that the lines between the shareholder, his wife, and the corporation were "heavily blurred." *Id.* at 201. The court further identified multiple transactions involving commingled funds without proper accounting or reconciliation, including cash advances between corporations for which there were no loan documents, contracts, bank statements, corporate minutes, or other records. *Id.*

The Tolbert Defendants argue Howard cannot demonstrate unity of interest because his allegations that they failed to observe corporate formalities, commingled funds, told him that they would make fraudulent transfers, signed a personal indemnity agreement, used their own cell

phones and computers to conduct business, and had no other employees are all "bare assertions with no material evidence to support [his] claims" (Dkt. 47-1 at 11). While it is true that several of Howard's alter-ego assertions are predicated on his "inform[ation] and belie[f]" (Dkt. 41 ¶¶ 6, 13, 15–16), Howard does allege a specific instance of commingling: namely that Doug Tolbert sent Howard a partial refund from a private retirement account owned by Beckie Tolbert because Powerhouse lacked sufficient funds (Dkt. 41 ¶ 21). The Court agrees that this allegation, standing alone, is a thin basis for finding commingling of personal and corporate funds.

Nevertheless, at the pleading stage, the Court finds the allegation sufficient to permit Howard to proceed to discovery on his alter-ego theory. Discovery may reveal additional facts bearing on whether the Tolbert Defendants and Powerhouse maintained separate identities. If discovery does not substantiate Howard's allegations or otherwise reveal facts supporting a unity of interest, the Tolbert Defendants may raise the issue at summary judgment. For now, this specific allegation, considered alongside Howard's other allegations concerning the relationship between the Tolbert Defendants and Powerhouse, plausibly supports a unity-of-interest finding.

The second prong asks whether respecting the corporate form would produce an inequitable result. *Wandering Trails*, 329 P.3d at 376. "[T]his factor requires something less than an affirmative showing of fraud but something more than the mere prospect of an unsatisfied judgment." *Lunneborg*, 421 P.3d at 201. In other words, "the inequitable result must arise from, or be connected to, the individual's control, rather than from ordinary business failure." *Idaho Inj. Laws., PA*, 2026 WL 2561482, at *7. In *Lunneborg*, the court found the second prong was satisfied because allowing the defendants to escape personal liability by diverting corporate assets would be to "sanction an injustice" and "create an inequitable result." *Id.* at 201–02. In *Idaho Injury*

*Lawyers, PA*, the Idaho Supreme Court concluded that allowing an individual to deplete corporate assets for his personal benefit would produce an inequitable result. 2026 WL 2561482, at *8.

Here, Howard further alleges that each Tolbert Defendant individually referred to Powerhouse as their personal company, and that in the event of a legal dispute, the Tolbert Defendants would shut down Powerhouse and establish a new company (Dkt. 41 ¶ 17). Howard also alleges that the Tolbert Defendants represented that they would make fraudulent transfers of assets to frustrate or prevent Howard from recovery damages from Powerhouse, specifically to frustrate litigation and evade legal accountability (*id.*). Unlike an ordinary business failure, these allegations concern the Tolbert Defendants' alleged use of their control over Powerhouse to evade liability and place its assets beyond Howard's reach. If proven, such conduct would be analogous to the asset depletion and diversion at issue in *Lunneborg* and *Idaho Injury Lawyers* and could result in an inequitable outcome. Accordingly, Howard has plausibly alleged the second prong of his alter-ego theory.

Having found that Howard pled sufficient facts to support the alter ego theory of liability. The Court therefore denies the Tolbert Defendants' motion to dismiss.

## IV. ORDER

**IT IS ORDERED that**

1. Defendants' Renewed Motion to Dismiss (Dkt. 47) is **GRANTED in part** and **DENIED in part**.

2. Plaintiff's negligence claim (Claim Two) is **DISMISSED WITHOUT PREJUDICE**.

3. Plaintiff's CLRA claim (Claim Nine) is **DISMISSED WITH PREJUDICE.**

4. Defendants' Motion to Dismiss (Dkt. 35) is **DENIED AS MOOT**.

5. The Court grants Plaintiff leave to file an amended complaint against Defendants to the extent Plaintiff can allege direct damage to personal property not subject to the transaction and physical manifestations of Plaintiff's emotional distress. Plaintiff must file any amended complaint against Defendants **WITHIN THIRTY (30) DAYS** of the entry of this decision.

UNITED STATES COURTS
DISTRICT OF IDAHO

DATED: September 30, 2026

Amanda K. Brailsford
U.S. District Court Judge